UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SUNDER SINGH,

Plaintiff,

v. Case No. 25-cv-1269-bhl

KELLY SALINAS et al.,

Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Sunder Singh, who is incarcerated at the Stanley Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on claims under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA) based on allegations that Defendants ignored and denied his requests to have a turban and a religious text consistent with the requirements of Sikhism, his religious faith. On July 14, 2026, Defendants filed a motion for summary judgment. Dkt. No. 16. For the reasons explained below, the Court will grant the motion and dismiss this case.

**BACKGROUND**

Singh was housed at Dodge Correctional Institution from December 23, 2024 until March 13, 2025, at which time he was transferred to Stanley Correctional Institution, where he continues to be confined. Defendant Kelly Salinas worked as the Corrections Program Supervisor at Dodge, Defendant Cheryl Webster worked as the Corrections Program Supervisor at Stanley, and Defendant Craig Lindgren worked as a chaplain at Stanley. Dkt. Nos. 21, 28 at ¶¶1-4.

Defendants explain that, under Division of Adult Institutions (DAI) policy #309.61.01, inmates may pursue religious practices that are consistent with security protocols, rehabilitative goals, health and safety, and the allocation of resources. The policy recognizes eight umbrella

groups designated to appeal to a wide range of religious beliefs.[1] Inmates who identify with a particular umbrella group are authorized to participate in religious services and acquire pre-approved religious items associated with their designation. Dkt. Nos. 21, 28 at ¶¶5-8.

Inmates who do not select an umbrella group but instead select "Other" or "No Preference" on the designation form are considered individual practitioners and must get prior approval before they may attend religious programming, acquire personal religious property, or receive dietary accommodations that are not approved under the prison's general rules. The "Request for New Religious Practice or Property (DOC-2075)" is the form prisoners must complete to acquire religious property. Inmates must send a completed DOC-2075 request to the chaplain. The chaplain then sends the form with his and the program supervisor's recommendations to the executive committee of the Religious Practices Advisory Committee. The committee reviews the request and recommendations to assess an inmate's sincerely held religious beliefs, the compelling governmental interests, and the least restrictive accommodation. The committee then sends a final recommendation to the warden, who has the final decision authority. Dkt. Nos. 21, 28 at ¶¶9-15; *see, e.g.*, Dkt. No. 27-1 at 16.

As noted, inmates may not possess religious items that are not associated with their designated umbrella group. This restriction does not apply to religious publications—an inmate may purchase any religious text regardless of their identified umbrella group. Defendants explain that, except for rings and flat religious head coverings such as a kufi or yarmulke, religious articles may not be displayed in the public areas of the prison. For example, inmates who select Islam as their umbrella group may have a turban as an approved religious item, but they may wear it only in their cells. Dkt. Nos. 21, 28 at ¶¶16-20.

Singh arrived at Dodge on December 23, 2024. Sikhism, which is the religion Singh practices, is not one of the eight umbrella groups, nor can it be categorized under any of the eight umbrella groups. Accordingly, upon arrival, Singh self-selected his religious preference as "No Preference." As a result, his turban was confiscated because, for security reasons, turbans are not allowable property under the prison's rules. Singh asserts that he did not understand that he had to complete the DOC-2075 form to request his turban because he does not understand English very

[1] The umbrella groups are: Catholic, Buddhist/Other Asian, Humanist/Atheist/Agnostic, Islam, Judaism, Native American/American Indian, Pagan, and Protestant/Other Christian. An inmate may instead select "Other" or "No Preference." *See, e.g.*, Dkt. No. 27-1 at 16.

well. Singh instead submitted two interview request forms to the chaplain. In one, he explained that he had not taken his turban off in 39 years, and he was very upset. He asserted that he felt he could not pray without his turban covering his head. He also stated, "I don't understand English." The chaplain at Dodge (who is not a Defendant) responded and informed Singh that his turban was in the chapel and that they would need to discuss his religious practice and property after he was moved off the reception unit. In the other request, Singh stated that he needed a Sikhism bible in Panjabi. The chaplain informed Singh that he would need to submit a request after he moved off the reception unit. It was clarified that Singh could "not be scheduled for services/studies or receive property from the Chapel until [he is] off Unit 19 Reception Status." Dkt. Nos. 21, 28 at ¶¶21-24; Dkt. No. 17-1 at 19; Dkt. No. 27-1.

A couple of weeks later, on January 10, 2025, Singh submitted an inmate complaint in which he stated that he had written to and met with the chaplain about his turban. Singh further stated in the inmate complaint that the chaplain had told him to write the inmate complaint so that his request for a turban could be reviewed. He also stated that the chaplain told him to change his religion, which he refused to do. It appears that Singh may have misunderstood the chaplain's directives. According to Defendants, both the Dodge chaplain and Salinas informed Singh several times that he needed to complete a DOC-2075 form. Singh asserts that, even though they knew he did not understand their instructions, they did not send him a DOC-2075 form to fill out. On January 23, 2025, the inmate complaint examiner recommended dismissing the inmate complaint because a turban is not an approved property item and is only allowed with certain religious preferences, which Singh had not designated. Dkt. Nos. 21, 28 at ¶¶25-28.

On February 14, 2025, Singh submitted an information request form asking to have Sikhism recognized by the Department of Corrections. Salinas responded, "I have already responded to you on this. I will not continue to discuss this with you." Salinas explains that by this point, she and the chaplain had already had numerous conversations with Singh about how to complete a DOC-2075 form. According to Defendants, Singh can comfortably converse in English, but he has trouble writing in English. Singh does not dispute that the chaplain offered to help him complete the form. Given her and the chaplain's repeated interactions with Singh, Salinas did not believe further discussion would be fruitful. Singh insists that he did not understand what he was required to do to properly request his turban, and he highlights that he was never given the DOC-2075 form while at Dodge. Dkt. Nos. 21, 28 at ¶¶29-31, 33.

On February 20, 2025, Singh submitted a second inmate complaint in which he complained he could not practice Sikhism. The inmate complaint examiner contacted Salinas who confirmed that she and the chaplain had explained the process of submitting a DOC-2075 form to Singh. The inmate complaint examiner therefore recommended dismissing the inmate complaint because Singh had not completed the necessary form to request a religious item. Dkt. Nos. 21, 28 at ¶¶32-33.

Singh was transferred to Stanley about a month later, in mid-March 2025. According to Singh, immediately after arriving at Stanley, he submitted a request form about his religious requests and was promptly provided with a DOC-2075 form, which he completed sometime before April 23, 2025. At the top of the form, Singh did not select an umbrella group, nor did he select "No Preference" or "Other." He did, however, write "Sikhism" on the line next to the "Other" selection. Singh appears to have completed the form without issue; his answers are easy to understand and do not suggest any issues with communicating in English. In reviewing the request, Chaplain Lindgren noted that, on his intake form at Dodge, Singh had listed "No Preference" as his religious designation but clarified that Singh identifies as Sikhism. He stated that Singh was requesting a turban and a Guru Granth Sahib, which is the central holy scripture of Sikhism. Lindgren noted that the request for a holy text was moot because Singh had been informed that he could order any book of faith from an approved vendor. Lindgren further observed that because Singh had selected "No Preference" on his intake form, there were no pre-approved property items he could possess. He noted that turbans are pre-approved items under the Islam umbrella group and offered that Singh could choose Islam as the umbrella group that most closely aligns with his faith. Lindgren therefore recommended that Singh's request for a turban be denied. Dkt. No. 18-1 at 1-2; Dkt. Nos. 21, 28 at ¶¶35-36.

A couple of weeks later, on May 16, 2025, in a second-level review of Singh's request and Lindgren's recommendation, Webster explained that Sikhism is a distinct religious tradition that does not belong to a broader group like Islam or Hinduism. She also noted the religious importance in Sikhism of wearing a turban. Webster stated that she "would support approval as long as once purchased the policies of where the Turban may be worn or displayed is followed." Webster forwarded the recommendations to the Religious Practices Advisory Committee on May 20, 2025. Once the recommendations were forwarded to the committee, neither she nor Lindgren were involved. Dkt. No. 18-1 at 2; Dkt. Nos. 21, 28 at ¶¶37-39.

Singh continued to inquire about whether his request for a turban and religious text had been approved. He was informed that the committee had not yet reviewed his request for a turban and was advised that it takes a while to receive a final answer. He was again informed that he could follow the personal property policy to order religious texts. Singh asserts that no one informed him of the approved vendors from which he could order the religious text. Dkt. Nos. 21, 28 at ¶¶42-45; Dkt. Nos. 18-2, 18-3.

On December 5, 2025, more than six months after Webster submitted her recommendation, the Religious Practices Advisory Committee addressed Singh's request. The committee noted that, due to a high volume of requests and the time required to review each request, the response time on DOC-2075 requests was lengthier than usual. It recommended allowing Singh to possess a turban as an adherent of Sikhism once he completed a new DOC-1090 Religious Preferences form, selected "Other," and clarified he is an adherent of Sikhism. The Committee acknowledged that English is not Singh's first language, so it recommended that someone explain to him the significance of selecting "Other" rather than "No Preference" on the form. On December 8, 2025, the warden approved the committee's recommendation. Dkt. No. 18-1 at 2-7; Dkt. No. 28 at ¶¶48-55.

The same day that the warden approved the recommendation, Lindgren called Singh to the chapel and explained he would need to fill out a new religious preferences form and change his selection from "No Preference" to "Other" and specify that he practices Sikhism. According to Lindgren, Singh became agitated. Singh asserts that he did not want to sign anything because of the pending lawsuit, and he suspected that Lindgren was helping him only because of the lawsuit. Lindgren asserts that he tried to explain that the turban had been approved pending an update to Singh's religious preferences form. Lindgren eventually took Singh to Webster's office so she could explain why the change in paperwork was required and give him the committee's report. Singh asserts that they should have gotten him an interpreter since it was clear he did not understand what they were saying. Dkt. No. 28 at ¶¶56-59.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

In his amended complaint, Singh initially asserted that Defendants violated his rights under the First and Fourteenth Amendments and RLUIPA when they denied and/or ignored his requests that he be allowed to wear a turban and possess a religious text. In response to Defendants' summary judgment motion, Singh appears to modify his claim to assert that Defendants violated his rights when they insisted that he complete the DOC-2075 form to request a religious item, failed to provide him with the form, and/or failed to provide him with an interpreter to help him understand what they were directing him to do.

The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). RLUIPA offers broader protections than the First Amendment in that it prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. §2000cc–1(a); *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt v. Hobbs*, 574 U.S. 352 (2015) (citing *Burwell v. Hobby Lobby*, 573 U.S. 682, 717, n. 28 (2014)).

Singh bears the initial burden of persuasion "that the challenged practice substantially burdened his religious exercise and that the request for a religious exemption is sincere." *Childs*, 168 F.4th at 1026 (citations omitted). The parties do not dispute that Singh's request for a turban is fairly characterized as "religious exercise," nor do they dispute that Singh sincerely believed that he must wear a turban, particularly while praying and reading his religious text. Accordingly,

the issue before the Court centers on whether Singh has shown that Defendants "substantially burdened" his religious exercises when they required him to complete the DOC-2075 form to request a turban. The record confirms that he has not done so.

"[E]valuating whether a burden is 'substantial' invites line-drawing issues." *Childs*, 168 F.4th at 1028. The Seventh Circuit recently clarified that the word "substantial" is not meaningless. *See id*. ("Congress incorporated a relative and proportionate term ('substantial') into the statute. So, RLUIPA's text requires courts to evaluate the severity of the burden placed on an inmate and decide whether it rises to the level of 'substantial.'"). To be fairly characterized as substantial, the burden of complying with the requirement must "realistically coerce [the prisoner] to violate his sincerely held religious belief." *Id.* The Court concludes as a matter of law that requiring a prisoner who seeks permission to use a religious item that is not allowed under the prison's general rules to complete a one-page request form does not *substantially* burden a prisoner's religious exercise. Requiring completion of the form "places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial 'bright line' that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1097 (2nd Cir. 1997). Indeed, the record shows that Singh was able to complete the form without assistance or issue shortly after he arrived at Stanley. *See* Dkt. No. 18-1 at 1.

Singh asserts that his religious practice was *substantially* burdened for a few reasons. First, he highlights that, while he was at Dodge, Salinas never gave him the form that he was required to complete. But whether Singh was provided with the form is a separate issue from whether the requirement that he complete the form substantially burdened his religious exercise. In any event, while the Court commends staff at Stanley for anticipating Singh's needs and proactively providing him with the form, the Court notes that "there is no general duty of rescue" under §1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Salinas explains that she and the chaplain at Dodge repeatedly informed Singh that he could change his religious designation to Islam or complete a DOC-2075 form to request a turban. Singh understandably refused to change his religious designation, but he offers no evidence to suggest that he ever asked for the DOC-2075 form, that his requests for a form were ignored or denied, or that the form was unavailable. Salinas's failure to go out of her way to help Singh and give him the form may not be commendable, but doing "nothing, when she might have gone beyond the requirements of her job

and tried to help him" does not violate the Constitution. *Id.* Moreover, Singh does not dispute that the chaplain at Dodge discussed with him how to submit a DOC-2075 form and offered to help him complete the form. Dkt. Nos. 21, 28 at ¶33. Singh bears the consequence of his failure to accept the chaplain's offer to help.

Singh also points to his difficulties understanding English. He asserts that Defendants should have known that he did not understand what was required of him and should have provided him with an interpreter. But Defendants highlight that, while Singh had trouble writing English, he was able to easily converse in English. Again, Singh does not dispute that he "understood the chaplain well and was able to speak easily to the chaplain." Dkt. No. 28 at ¶33. Moreover, no reasonable jury could conclude from the completed DOC-2075 form that Singh did not understand the form or was unable to provide the requested information. *See* Dkt. No. 18-1 at 1. Accordingly, given Defendants' many interactions with Singh, their failure to appreciate his misunderstanding of the process amounts to at most negligence, which is not actionable under the Constitution. *See Childs*, 168 F.4th at 1033.

Finally, Singh points to the delay in the approval of his request. But §1983 requires that an individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Defendants explain that, once their review of and recommendation on Singh's request was complete, the final recommendation and decision on the request was out of their hands. None of the Defendants were involved in the Religious Practices Advisory Committee's review or recommendation. As such, they are not liable for the delay between Singh's submission of the form and the committee's final recommendation approving the request.

Put plainly, Singh has not shown that the requirement that he complete a one-page form to request a religious item not approved under general prison rules "substantially" burdened his religious exercise or a central religious belief. Accordingly, Defendants are entitled to summary judgment on Singh's First Amendment and RLUIPA claims in connection with his request for a turban.

Defendants are also entitled to summary judgment on Singh's First Amendment and RLUIPA claims in connection with his request for a religious text. Singh's assertion that Defendants denied his request for a Sikh Bible are contradicted by the record. Defendants repeatedly informed Singh that there was no limitation on his opportunity to purchase a Sikh Bible

from an approved vendor. Singh asserts that no one informed him which vendors were approved, but Singh offers no evidence to support a conclusion that Defendants refused to provide him with this information or that they knew Singh was unable to determine this information through other sources. Moreover, to the extent Singh believes that Defendants should have purchased a religious text for him, the Seventh Circuit has explained that states are not required to pay for religious items for inmates and the de minimis cost of requiring inmates to purchase their own religious items does not place a substantial burden on religious exercise. *Childs*, 168 F.4th at 1032.

Finally, Defendants are entitled to summary judgment on Singh's claim under the Equal Protection Clause, which prohibits discrimination based on membership in a protected class. *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). To survive summary judgment, Singh was required to show that Defendants intentionally treated him differently because of his religion. *Lisle,* 933 F.3d at 719-20. He has not made that showing. The undisputed record shows that, just like all inmates, Singh was allowed to purchase the religious text of his choosing. It also shows that, just like all inmates who designate their religious affiliation as "No Preference" or "Other," he was required to use the DOC-2075 form to request a religious item. Singh notes that Jews and Muslims are allowed to wear religious headwear (including turbans) without submitting a request, but Singh ignores that Jews and Muslims chose a specific religious affiliation that included pre-approved religious items. Singh has not identified any inmates who chose "No Preference" or "Other" on their religious designation form who were allowed to wear religious headwear without submitting a request on the required form. Accordingly, without evidence of a group of inmates that were treated differently despite being similarly situated, Singh's claim under the Equal Protection Clause must be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 16) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 10, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.